UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

JODY SINGH

Plaintiff,

v.

GOVERNMENT EMPLOYEES INSURANCE COMPANY et al,

Defendants.

**MEMORANDUM AND ORDER**

25-cv-03336 (LDH) (SDE)

LASHANN DEARCY HALL, United States District Judge:

Jody Singh ("Plaintiff") brings this instant action against Sachit Kohli ("Defendant Kohli") and Ashanti Williams ("Defendant Williams") for aiding and abetting discrimination and retaliation in violation of the New York State Human Rights Law ("NYSHRL") and the New York City Human Rights Law ("NYCHRL").[1] N.Y. Exec. Law §§ 296(6); N.Y.C Admin. Code § 8-107. Defendants Kholi and Williams (collectively "Defendants") move, pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, to dismiss the Complaint's Seventh Cause of Action against them.[2] (Mem. of Law in Supp. of Defs' Mot. to Dismiss ("Mot.") at 1, ECF No. 18.)

## BACKGROUND[3]

Plaintiff worked as an Auto Damages Adjuster Trainee at GEICO from September 12, 2022, to January 29, 2024. (Complaint ("Compl.") ¶ 2, ECF No. 1.) On November 11, 2022,

[1] Plaintiff brings additional claims against Defendants Government Employees Insurance Company ("GEICO"), David Grabovetsky, and Jeffrey Schuman. Those claims are not the subject of the present motion.

[2] Defendant Kohli and Defendant Williams are only named in the Complaint's Seventh Cause of Action.

[3] The following facts are taken from the Complaint and accepted as true for the purposes of addressing Defendants' instant motion.

Plaintiff learned that she was pregnant. (*Id.* ¶ 18.) Plaintiff gave birth on March 7, 2023, and took maternity leave until June 13, 2023. (*Id.* ¶ 55.) On June 19, 2023, upon her return from maternity leave, Plaintiff learned that she was to be reassigned to handle claims in the Bronx, a two-hour commute from her home in Brooklyn. (*Id.*¶¶ 56, 57.) The length of the commute, especially in the summer, meant that Plaintiff could not store and preserve breast milk without it spoiling. (*Id.* ¶ 58.) Moreover, Plaintiff did not have a cool and private place to lactate. (*Id.*)

On June 23, 2023, Plaintiff contacted Amanda Feuz, GEICO's corporate leave specialist, to request lactation accommodations. (*Id.* ¶¶ 70-71.) When Ms. Feuz did not respond, Plaintiff sent an inquiry to Cheron Jackson, a human resources generalist, on June 28, 2023. (*Id.* ¶ 72.) Ms. Jackson responded to Plaintiff's inquiry and informed Plaintiff that she would need to request any accommodation using the company's "Leave Intake Tool." (*Id.* ¶ 73.) That same day, Plaintiff submitted a formal request for nursing accommodations using the Leave Intake Tool. (*Id.* ¶ 75.) On June 29, 2023, Chris Oliva, a leave specialist, emailed Plaintiff paperwork to complete in response to her accommodations request. (*Id.* ¶ 78.) This paperwork included an attachment titled "ADA paperwork – Due 7/14/23" which included a "GEICO Accommodation Request Assessment Form" to be completed by Plaintiff's physician. (*Id.*) Plaintiff reviewed the email and the attached paperwork. (*Id.* ¶ 79.) However, Plaintiff believed the paperwork was sent to her in error because the forms did not explicitly mention "nursing or lactation or childbirth accommodations" and seemed to largely pertain to employees seeking a leave of absence, not workplace accommodations. (*Id.* ¶ 79.) As put in the Complaint, Plaintiff did not "perceive the significance of the 'Accommodation Request Assessment Form'" and failed to complete it. (*Id.*) Nevertheless, based on Plaintiff's conversation with Ms. Jackson (and Ms.

Feuz), Plaintiff assumed that she had successfully requested the accommodation through the Leave Intake Tool. (*Id.* ¶¶ 77-80.)

On July 17, 2023, Mr. Oliva notified Plaintiff that her ADA accommodations request was denied because she had not submitted the requested medical paperwork. (*Id.* ¶102.) That said, Plaintiff was informed that "management/HR will be [her] point of contact for help with pumping. This denial is for the ADA." (*Id.*) That same day, Plaintiff responded to Mr. Oliva's email, cc-ing her direct supervisor Jeffery Schuman, and Defendant Kohli, Mr. Schuman's supervisor, along with four other individuals working in HR and management, to appeal the denial of her accommodations request. (*Id.* ¶¶ 106-107.) Mr. Oliva forwarded Plaintiff's email to Defendant Williams, a human resources business partner at GEICO. (*Id.* ¶ 108.) Plaintiff followed up with Mr. Oliva and Defendant Williams on July 19, 2023, but did not receive a response. (*Id.* ¶ 109.) On August 1, 2023, Plaintiff requested a call with Defendant Williams to discuss her accommodations request. (*Id.* ¶ 113.) Defendant Williams replied that "[l]actation requests are handled by our leave team", and referred Plaintiff back to Mr. Oliva and his team as the "best point of contact as they handle the lactation requests." (*Id.*)

By July 31, 2023, Plaintiff had not received any nursing related accommodations, which, according to the Complaint, impaired her workplace productivity. (*Id.* ¶ 118.) On August 1, 2023, Mr. Schuman scheduled a video conference between himself, Plaintiff, Defendant Kohli, and Michael Ulberg (an auto damage manager). (*Id.* ¶¶ 119-120.) During the call, Plaintiff was told that her productivity was too low and that she was at risk of termination. (*Id.* ¶ 120.) On the call, Plaintiff raised her history of unaddressed lactation requests and how the inability to pump and store breastmilk impacted her job performance, as well as her and her child's wellbeing. (*Id.* ¶ 121.) Plaintiff also referenced the email she sent on July 17 raising these same concerns. (*Id.*)

Defendant Kohli, who was cc-ed on the July 17 email, acknowledged on the call that he had not yet read the July 17 email. (*Id.* ¶ 122.) Later on the call, Defendant Kohli expressed his skepticism as to whether adding a refrigerator to the car Plaintiff drove would improve her productivity and is alleged to have said "[i]f we provide you with an accommodation, then we will have to provide all nursing moms with accommodations, and we can't afford to do that." (*Id.* ¶ 125.) Defendant Kohli also informed Plaintiff that she would not be able to attend a conference that she previously requested to attend due to her low productivity. (*Id.* ¶ 126.)

Following these events, following interventions by her attorney, Plaintiff was allowed to work in Brooklyn. (*Id.* ¶ 148.) Plaintiff was terminated from her role on January 29, 2024. (Compl. ¶¶ 154-162.)

**STANDARD OR REVIEW**

To withstand a motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim for relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.*(quoting *Twombly*, 550 U.S. at 556). A court considering a Rule 12(b)(6) motion must take the factual allegations in the complaint to be true and draw all reasonable inferences in the plaintiff's favor. *See Id.*

## DISCUSSION

Defendants argue that Plaintiff cannot establish aiding and abetting liability under the NYSHRL or the NYCHRL because the Complaint does not contain sufficient facts to show Defendant Kohli's or Defendant Williams' actual participation in any alleged discriminatory or retaliatory acts, or sufficient facts to show that the Defendants shared GEICO's—the principal actor—discriminatory intent. (Mot. at 5-6.) The Court agrees.

The NYSHRL and the NYCHRL prohibit the "aid[ing], abet[ting], compel[ing] or coerc[ing] the doing" of any unlawful discriminatory or retaliatory act. N.Y. Exec. Law § 296(6); N.Y.C. Admin Code § 8-107(6). The same standard used to evaluate aiding and abetting claims under the NYSHRL applies to claims brought under the NYCHRL because "the language of the two laws is 'virtually identical.'" *Feingold v. New York*, 366 F.3d 138, 158 (2d Cir. 2004) (quoting *Dunson v. Tri–Maintenance & Contractors, Inc.,* 171 F.Supp.2d 103, 113–114 (E.D.N.Y. 2001)). Under either statute, a plaintiff must plead sufficient facts "that suggest the defendant actually participate[d] in the conduct giving rise to a discrimination claim" and "that the aider and abettor share[d] the intent or purpose of the principal actor." *Garnett-Bishop v. New York Cmty. Bancorp, Inc.*, No. 12-CV-2285, 2014 WL 5822628, at *18 (E.D.N.Y. Nov. 6, 2014) (internal quotations and citations omitted).

Plaintiff pleads a limited set of facts that pertain to Defendant Kohli and Defendant Willaims. For Defendant Kohli, Plaintiff's allegations primarily revolve around his presence at the August 1, 2023 meeting regarding Plaintiff's productivity; his lack of response to Plaintiff's July 17, 2023 email—which he was cc-ed on—regarding her need for nursing accommodations; his refusal to allow Plaintiff to attend a work-related conference; and the fact that he was Plaintiff's "ultimate supervisor" because he oversaw both of Plaintiff's direct supervisors (Mr.

Grabovetsky and Mr. Schuman). (Compl. ¶¶ 8, 119-127). None of these facts allow the Court to infer that Defendant Kohli's participated in the decision to terminate Plaintiff's employment or acted with discriminatory intent.

The allegations against Defendant Williams fare no better. Plaintiff's Complaint alleges simply that Defendant Williams redirected Plaintiff back to the leave team, headed by Mr. Oliva, when Plaintiff reached out regarding her need for nursing accommodations. (Compl. ¶¶ 108-115.) There is nothing in the Complaint that suggests Defendant Williams' participation in the discrimination Plaintiff alleges and in the termination of Plaintiff's employment. And, as in the case for Defendant Kohli, Plaintiff fails to plead any facts that suggest Defendant Williams possessed a discriminatory or retaliatory intent.

In an effort to convince the Court that her allegations pass muster, Plaintiff directs the Court's attention to *McHenry v. Fox News Network, LLC*, 510 F. Supp. 3d 51 (S.D.N.Y. 2020). (Pls.' Mem. of Law in Opp'n to Defs.' Mot. to Dismiss ("Opp'n") at 5-6, ECF No. 19.) Certainly, *McHenry* makes it clear that a supervisor's failure to take remedial measures in response to a complaint of discrimination can constitute actual participation when proper factual allegations are alleged. *McHenry*, 510 F. Supp. 3d at 68 ("A supervisor's failure to take adequate remedial measures in response to a complaint of discrimination can, with proper factual allegations, constitute actual participation." (internal quotes and citations omitted). However, "'[s]parse allegations' that only indicate notification of an allegedly unlawful work environment and 'general statements' alleging the failure to correct discrimination and retaliatory actions are 'inadequate to plead that [the defendant] actually participated in aiding and abetting harassment, discrimination, or retaliation against [the plaintiff].'" *Zaki v. OTG Mgmt. LLC*, No. 23-CV-8189, 2025 WL 4783125, at *3 (E.D.N.Y. Nov. 20, 2025) (quoting *McHenry*, 510 F. Supp. 3d at 76-

77). As such, and which Plaintiff seemingly ignores, the court in *McHenry* declined to find aiding and abetting liability for two of the four supervisory defendants. *McHenry*, 510 F. Supp. 3d at 76-79.) This was so because the plaintiff presented conclusory allegations that those defendants failed to take any appropriate action to correct the discrimination plaintiff experienced despite allegedly having some notice of these complaints. *Id*. The same outcome is warranted here.

**CONCLUSION**

For the foregoing reasons, Defendants' motion to dismiss the Complaint's Seventh Cause of Action is **GRANTED**.

SO ORDERED.

Dated: Brooklyn, New York
September 29, 2026

/s/ LDH
LASHANN DEARCY HALL
United States District Judge